FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 30, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANA T.,<br><br>              Plaintiff,<br><br>     vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>              Defendant. | No. 1:17-cv-03095-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 17, 18 |

     BEFORE THE COURT are the parties' cross-motions for summary

judgment. ECF Nos. 17, 18. The parties consented to proceed before a magistrate

judge. ECF No. 7. The Court, having reviewed the administrative record and the

parties' briefing, is fully informed. For the reasons discussed below, the Court

denies Plaintiff's Motion, ECF No. 17, and grants Defendant's Motion, ECF No.

18.

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**THREE-STEP EVALUATION PROCESS FOR CHILDHOOD DISABILITY**

To qualify for Title XVI supplement security income benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations provide a three-step process to determine whether a claimant satisfies the above criteria. 20 C.F.R. § 416.924(a). First, the ALJ must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," which is defined as an impairment that causes "more than minimal functional limitations." 20 C.F.R. § 416.924(c). Finally, if the ALJ finds a severe impairment, the ALJ must then consider whether

the impairment "medically equals" or "functionally equals" a disability listed in the "Listing of Impairments." 20 C.F.R. § 416.924(c)-(d).

If the ALJ finds that the child's impairment or combination of impairments does not meet or medically equal a listing, the ALJ must determine whether the impairment or combination of impairments functionally equals a listing. 20 C.F.R. § 416.926a(a).[1] The ALJ's functional equivalence assessment requires the ALJ to evaluate the child's functioning in six "domains." These six domains, which are designed "to capture all of what a child can or cannot do," are as follows:

(1) Acquiring and using information:
(2) Attending and completing tasks;
(3) Interacting and relating with others;
(4) Moving about and manipulating objects;
(5) Caring for self; and
(6) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi). A child's impairment will be deemed to functionally equal a listed impairment if the child's condition results in a "marked"

_____

[1] All references to 20 C.F.R. § 416.926a in this decision refer to the version of the regulation effective October 7, 2016, to March 26, 2017, which was the version in effect at the time of the ALJ's decision. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).

ORDER - 4

limitations in two domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). An impairment is a "marked limitation" if it "interferes seriously with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). By contrast, an "extreme limitation" is defined as a limitation that "interferes very seriously with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work

ORDER - 5

activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## PROCEDURAL HISTORY AND ALJ'S FINDINGS

On September 12, 2008, an application for supplemental security income under Title XVI of the Social Security Act was protectively filed on Plaintiff's behalf, alleging an onset date of September 1, 2008. Tr. 129-31. Plaintiff was 12 years old on her alleged onset date and attained the age of 18 on January 28, 2014, while her application was pending. Tr. 529. The applications were denied initially, Tr. 70-72, and upon reconsideration, Tr. 76-79. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on April 20, 2011. Tr. 32-67.

On July 14, 2011, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. 10-22. The Appeals Council denied review. Tr. 1-6. Plaintiff sought relief in District Court, and based on Defendant's motion, the Court remanded the case for further proceedings[2] pursuant to sentence six of 42 U.S.C. §

---

[2] The reason for remand was that the transcription of the record contained many inaudible portions and the Commissioner asserted that the transcribed sections were not faithful to the hearing as it was held. Tr. 634.

ORDER - 8

405(g). Tr. 634-35. Plaintiff appeared at a second hearing on March 24, 2014. Tr. 425-59. On April 25, 2014, the ALJ issued a second decision finding that Plaintiff was not disabled. Tr. 400-19. On August 3, 2015, the District Court remanded the case for further administrative proceedings. Tr. 676-96. Plaintiff appeared at a third hearing on June 7, 2016. Tr. 554-97. On March 2, 2017, the ALJ issued a third decision finding that Plaintiff was not disabled. Tr. 523-46.

As to childhood SSI claim, the ALJ noted that Plaintiff was in the "Adolescents" age group on the date of her application and attained age 18 on January 28, 2014.[3] Tr. 529. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the date Plaintiff's application was filed. *Id.* At step two, the ALJ found that before attaining age 18, Plaintiff had the following severe impairments: Henoch-Schonlein purpura and/or idiopathic thrombocytopenic purpura,[4] seizure disorder, affective disorder, anxiety disorder,

_____

[3] Under SSA regulations, "[a]n individual attains a given age on the first moment of the day preceding the anniversary of his birth corresponding to such age." 20 C.F.R. § 416.120(c)(4).

[4] Henoch-Schonlein purpura and idiopathic thrombocytopenic purpura are immune diseases that cause inflammation of the smaller blood vessels, characteristically causing a rash and joint inflammation. Tr. 43-45.

ORDER - 9

and substance use disorder. *Id.* At step three, the ALJ found that before attaining age 18, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 530. The ALJ then determined that before attaining age 18, Plaintiff did not have an impairment or combination of impairments that functionally equaled the severity of the listings. Tr. 532. As a result, the ALJ concluded that Plaintiff was not disabled prior to attaining age 18 and continued on to the five step sequential evaluation of Plaintiff's application for adult SSI benefits. Tr. 544.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the date the application was filed. Tr. 529. At step two, the ALJ found Plaintiff had not developed any new impairments since attaining age 18 and that Plaintiff continued to have the following severe impairments: purpura, seizure disorder, affective disorder, anxiety disorder, and substance use disorder. Tr. 544. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. Tr. 530. The ALJ then concluded that Plaintiff has the RFC to perform work with the following limitations:

> [S]ince attaining age 18, [she] has had the residual functional capacity to lift and carry ten pounds occasionally and less than ten pounds frequently. She can stand and/or walk for fifteen-minute intervals, for a total of two hours per eight-hour workday. She can sit for two-hour intervals, for a total of eight hours per eight-hour workday. She cannot climb ladders, rope, or scaffolding. She can occasionally kneel, crawl, or climb ramps and stairs.

She cannot drive, work at heights, or operate heavy machinery. She can understand, remember, and carry out tasks generally associated with occupations with a specific vocational preparation (SVP) of two or less. She can have occasional superficial interaction with the general public.

Tr. 544.

At step four, the ALJ found Plaintiff has no past relevant work. Tr. 545. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as assembler, document preparer, and toy stuffer. Tr. 545-46. The ALJ concluded Plaintiff had not been under a disability, as defined in the Social Security Act, since January 28, 2014, the date she attained age 18, through the date of the decision. Tr. 546. Exceptions were not filed and the Appeals Council did not otherwise assume jurisdiction, so the ALJ's March 2, 2017 decision became the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 416.1484.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her child and adult supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 17. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly evaluated Plaintiff's symptom claims;

2. Whether the ALJ properly evaluated the medical opinion evidence;

ORDER - 11

3.  Whether the ALJ properly evaluated the lay testimony;

4.  Whether the ALJ properly assessed the functional equivalence domains; and

5.  Whether the ALJ properly assessed whether Plaintiff's impairments met or medically equaled a listed impairment.

ECF No. 17 at 6.

## DISCUSSION

### A. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims.  ECF No. 17 at 15-19.  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina,* 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue,* 572 F.3d 586, 591(9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7. The ALJ is instructed to "consider all of the evidence in an individual's record," "to determine how symptoms limit ability to perform work-related activities." *Id*. at *2.

The ALJ concluded that that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but that Plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence in the record. Tr. 533.

### 1. *Record of Improvement with Treatment*

The ALJ found Plaintiff's symptom complaints were inconsistent of her record of improvement with treatment. Tr. 533-35. The effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3); *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits) (internal citations omitted); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).

*a. Purpura*

The ALJ found that Plaintiff's purpura symptoms were well-controlled with treatment.  Tr. 533-34.  Plaintiff reported that her purpura developed around November 2007.  Tr. 305.  However, the record shows Plaintiff's purpura symptoms largely improved with treatment.  *See* Tr. 325 (December 26, 2006: Plaintiff's leg lesions cleared up with prednisone and returned but with lesser intensity); Tr. 329 (January 8, 2007: rash on legs is mostly gone and few lesions seen); Tr. 333 (February 5, 2007: lesions have gone away); Tr. 338 (November 7, 2007: Plaintiff's leg pain and edema had resolved and rash was staying away); Tr. 342 (October 24, 2008: legs non-tender to palpation and no observable rash); Tr. 344 (December 2, 2008: leg examination benign); Tr. 379 (December 7, 2010: rash treated with prednisone); Tr. 1158 (December 3, 2015: prednisone prescribed to treat painful bumps on Plaintiff's leg and back); Tr. 1159 (December 23, 2015: Plaintiff did not complain of purpura flare during follow-up visit).  The ALJ reasonably concluded that this record showed Plaintiff's purpura responded well to treatment.  Tr. 533-34.

Plaintiff asserts that the ALJ erred in failing to identify evidence of additional purpura flares that Plaintiff argues supports Plaintiff's testimony.  ECF No. 17 at 16; *see* Tr. 356 (March 6, 2009: Plaintiff reported leg pain over the prior four to five days); Tr. 379 (December 7, 2010: rash observed and treated with

ORDER - 15

prednisone). Plaintiff also asserts that the evidence of blood in Plaintiff's urine and stool is evidence of purpura flares, citing Dr. Browder's 2011 testimony that purpura can cause some bleeding in the bowel or kidney. ECF No. 17 at 16; *see* Tr. 44. While the record supports the existence of these symptoms, no medical source indicated that these symptoms were caused by purpura, and Plaintiff's treatment notes do not characterize these symptoms as purpura flares.[5] *See* Tr. 325, 327, 332, 334, 494, 503, 984, 1106, 1134. Indeed, Plaintiff testified in 2016 that her attorney was "the first person that ever told [her]" that her purpura could cause gastrointestinal symptoms. Tr. 588. Plaintiff also testified in 2014 that her gastrointestinal care was intended to evaluate her for "what [her] mom has," rather than purpura symptoms. Tr. 575; *see* Tr. 1134 (Plaintiff's mother has ulcerative colitis). Accordingly, the ALJ did not err in failing to identify this evidence as evidence of ongoing purpura flares. The Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). Overall,

---

[5] Additionally, the record indicates Plaintiff also has a history of kidney stones and ulcerative colitis associated with these symptoms. *See, e.g.,* Tr. 1075, 1106, 1109.

the ALJ's finding that Plaintiff's purpura symptoms improved with treatment is a

rational interpretation of the evidence and supported by substantial evidence.

### b. Seizures

The ALJ also found that Plaintiff's seizures showed a record of positive

responses to treatment. Tr. 534. Plaintiff testified during the 2016 hearing that her

seizure medication did not help her and that she experienced four to five seizures

per month. Tr. 568, 573. However, the ALJ noted that the medical record

established that Plaintiff's seizures were more controlled than Plaintiff alleged. Tr.

534; *see* Tr. 1075 (May 31, 2013 emergency department notes indicate missed

seizure medications was a contributing factor to Plaintiff's seizures); Tr. 478

(Plaintiff was noted on June 18, 2013 to not be compliant with her seizure

medications); Tr. 469 (Plaintiff reported on July 24, 2013 that she had six seizures

in June 2013); Tr. 432-35 (Plaintiff testified on March 24, 2014 that her seizures

were controlled with a new medication she had just started taking); Tr. 971

(Plaintiff reported on October 27, 2014 that she had only experienced two seizures

since her last visit in April 2014: one in August 2014 and one in September 2014);

Tr. 970 (Plaintiff reported on February 25, 2015 that she had experienced no

seizures since the previously-reported seizure in September 2014); Tr. 1040

(Plaintiff reported during an August 14, 2015 emergency room visit that she had

not had a seizure in "a long time"); Tr. 968 (Plaintiff reported on September 3,

2015 that she self-discontinued her seizure medication around mid-July 2015 and
that her most recent seizure was the previously-reported one in September 2014);
Tr. 989 (Plaintiff reported on December 2, 2015 that she experienced seizures one
to two times per month, which was down from her prior report that she
experienced seizures two to three times per month); Tr. 967 (December 3, 2015
chart note indicates Plaintiff's date of last seizure was unknown but possibly June
2015); Tr. 1024 (Plaintiff visited the emergency room on January 15, 2016 for a
seizure); Tr. 1003 (Plaintiff reported on January 19, 2016 that she used to
experience one to two seizures per month but now they were less frequent).
Plaintiff also conceded at the 2016 hearing that she experiences increased seizures
when she is not compliant with medication. Tr. 556. The ALJ reasonably
concluded that this record showed Plaintiff's seizures showed improvement when
she was compliant with medication, and that the record was inconsistent with her
allegations that she experienced four to five seizures per month. Tr. 534.

 Plaintiff offers evidence that Plaintiff asserts supports Plaintiff's reports.
ECF No. 17 at 16-17. Specifically, Plaintiff identifies evidence of additional
seizures and jerking motions.[6] *See* Tr. 473 (Plaintiff reported jerking motions five

---

[6] Plaintiff argues that the ALJ "fail[ed] to differentiate" between jerking and
convulsive seizures. ECF No. 17 at 17. However, it is not clear from the record

ORDER - 18

times per day); Tr. 971 (Plaintiff reported jerking motions occurred four days per week); Tr. 971 (Plaintiff reported two seizures in February 2014 and two seizures in March 2014); Tr. 948 (Plaintiff reported to consultative examiner Dr. Chau that she experienced four seizures in January 2016); *but see* Tr. 571 (Plaintiff testified in June 2016 that she sees her family doctor after she experiences a seizure for a checkup); Tr. 1162-65 (family doctor notes in January and February 2016 do not report seizures). The Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). The evidence Plaintiff identifies is consistent with the ALJ's finding of improvement with treatment. For example, the additional seizures Plaintiff reported in February and March 2014 are consistent with evidence that Plaintiff's seizures improved with new medication that she started taking at the end of March 2014. Even considering the evidence Plaintiff identifies, the ALJ's interpretation of the

_____

that Plaintiff's jerking motions are seizures, as Plaintiff asserts. Dr. Sloop's treatment notes consistently document Plaintiff's jerking movements as a phenomenon that occurs before she has a seizure and do not describe them as seizures. *See* Tr. 469, 968.

ORDER - 19

evidence is a reasonable interpretation of the evidence. The ALJ's conclusion is supported by substantial evidence.

Additionally, Plaintiff notes that the Court previously held that the ALJ's 2014 determination that Plaintiff's seizures were "intermittent and well-controlled" was not consistent with the evidence of record at the time of the ALJ's April 25, 2014 decision. ECF No. 17 at 10; *see* Tr. 692-93. Plaintiff asserts, without legal citation or argument, that the law of the case doctrine prohibited the ALJ from revisiting this finding on remand. ECF No. 17 at 16. "The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Stacy v. Colvin*, 852 F.3d 563, 567 (9th Cir. 2006) (citing *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)). However, the doctrine "should not be applied when the evidence on remand is substantially different." *Id.* Here, the record on remand contained new evidence of Plaintiff's improvement in her seizure symptoms during the period following the ALJ's prior decision and this Court's prior order. Tr. 966-77, 1008-1125, 1126-76. Specifically, the ALJ considered evidence of medical treatment notes where Plaintiff reported experiencing few or no seizures, including an approximately year-long period in which Plaintiff reported experiencing no seizures. Tr. 534; *see* Tr. 571, 967-71, 1003, 1024, 1040, 1075, 1162-65. Because this evidence is substantially different than the record prior to remand, the law of

the case doctrine does not apply.  The Court finds that based on the current record,

for reasons identified *supra*, the ALJ's finding is supported by substantial

evidence.

### c. Mental Health

The ALJ found Plaintiff's anxiety showed a record of improvement with

treatment.  Tr. 535.  Despite Plaintiff's testimony that her mental health

medications were not helpful, Tr. 568-59, the ALJ noted that Plaintiff consistently

refilled her anxiety prescriptions during the relevant period, including dates after

her hearing testimony.  *See* Tr. 501-19, 1129-1176.  After re-engaging in

counseling in 2016, Plaintiff reported an improvement in her anxiety symptoms.

Tr. 1003.  The ALJ reasonably concluded that this record indicated Plaintiff's

anxiety showed a positive response to treatment.  Tr. 535.  Plaintiff offers evidence

of Plaintiff's mental health symptom complaints as evidence that Plaintiff's

condition was not well-controlled.  ECF No. 17 at 17-18; *see* Tr. 460 (Plaintiff

reported feeling depressed and worthless); Tr. 461 (Plaintiff reported suicide

attempt in December 2013); Tr. 470 (Plaintiff reported increased anxiety and

depression).  However, even considering the evidence Plaintiff identifies, the

ALJ's conclusion is supported by substantial evidence.  *See Tommasetti*, 533 F.3d

at 1038 ("[W]hen the evidence is susceptible to more than one rational

interpretation" the court will not reverse the ALJ's decision).  The ALJ's

interpretation of the evidence was reasonable, so the Court defers to the ALJ's finding.

Overall, the ALJ's finding that Plaintiff's symptom complaints were inconsistent with her record of symptom improvement with treatment is supported by substantial evidence.

### 2. Lack of Supporting Medical Evidence

The ALJ found Plaintiff's symptom complaints were inconsistent with the medical evidence in the record. Tr. 534-35. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's impairments and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2). Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

### a. Purpura

The ALJ found that the medical evidence did not support the level of pain Plaintiff alleged from purpura symptoms. Tr. 533-34. Plaintiff testified in 2014

that her leg pain from purpura was so severe that she was unable to walk and that her mother would have to help her into the shower. Tr. 441-42. In 2016, Plaintiff testified that she suffered severe leg pain three times per week and was unable to walk for more than 20 minutes. Tr. 587. However, as discussed *supra*, the ALJ found Plaintiff's purpura improved with treatment. Tr. 533-34; *see* Tr. 325, 329, 333, 338, 342, 344, 379, 1158, 1159. Additionally, the ALJ noted that physical examinations and observations did not corroborate Plaintiff's allegations. Tr. 533-34; *see* Tr. 338 (November 7, 2007: full range of motion in lower extremities); Tr. 340 (July 14, 2008: normal bilateral leg range of motion); Tr. 344 (December 2, 2008: leg examination benign); Tr. 306-07 (December 6, 2008: physical examination showed normal gait, normal range of motion, and normal strength); Tr. 373 (September 2, 2010: full motion in legs); Tr. 1123 (August 19, 2011: normal joint range of motion); Tr. 1109 (November 1, 2011: normal joint range of motion); Tr. 1087 (January 13, 2013: full range of motion and strength in extremities); Tr. 1077 (May 31, 2013: full strength in extremities); Tr. 476 (July 24, 2013: full range of motion in bilateral legs and normal strength, bulk, tone, and gait); Tr. 1063 (November 29, 2013: extremities all appear grossly normal with no appreciated pain with palpation); Tr. 1053 (September 4, 2014: full, normal range of motion in extremities); Tr. 1041 (August 14, 2015: extremities all appear grossly normal with no appreciated pain with palpation); Tr. 949 (February 9,

ORDER - 23

2016: standing with unremarkable posture, full knee extension, negative straight leg test to 80 degrees, internal rotation of hips unremarkable, no palpable spasm of the paraspinal muscles, strength 4+/5 across all joints, and Plaintiff ambulated without assistive devices); Tr. 1013 (April 25, 2016: extremities appear grossly normal with no appreciated pain with palpation, range of motion shows no acute changes and intact in all extremities); Tr. 1027 (January 15, 2016: extremities all appear grossly normal with no appreciated pain with palpation).

Plaintiff offers evidence in the record of one instance of leg pain and instances of blood in Plaintiff's stool and urine to support Plaintiff's argument that the ALJ's conclusion is not supported by substantial evidence. ECF No. 17 at 15-16. Plaintiff's argument again relies on evidence of symptoms that, as discussed *supra*, the medical evidence does not indicate are caused by Plaintiff's purpura. Furthermore, Plaintiff testified that her gastroenterologist did not find abnormalities in her test results. Tr. 588. Therefore, even if Plaintiff did establish that these symptoms were caused by purpura, the ALJ's conclusion that the medical evidence did not support the severity of Plaintiff's symptom complaints would still be supported. The evidence Plaintiff identifies does not establish that the ALJ's conclusion is not supported by substantial evidence.

*b. Seizures*

The ALJ found that the medical evidence as a whole did not support the frequency of seizures Plaintiff alleged. Tr. 534-35. Plaintiff testified at the June 2016 hearing that she experiences four to five seizures per month. Tr. 573. Plaintiff also testified that she sees her primary care doctor after having a seizure, so she sees her doctor about four times per month. Tr. 571, 573-54. Although the ALJ noted that the record documented Plaintiff experienced seizures, the ALJ found that the record did not corroborate the frequency of seizures Plaintiff alleged. *See* Tr. 469 (Plaintiff reported on July 24, 2013 that she had six seizures in June 2013); Tr. 478 (Plaintiff was noted on June 18, 2013 to not be compliant with her seizure medications); Tr. 1075 (May 31, 2013 emergency department notes indicate missed seizure medications was a contributing factor to Plaintiff's seizures); Tr. 432-35 (Plaintiff testified on March 24, 2014 that her seizures were controlled with a new medication she had just started taking); Tr. 971 (Plaintiff reported on October 27, 2014 that she had only experienced two seizures since her last visit in April 2014: one in August 2014 and one in September 2014); Tr. 970 (Plaintiff reported on February 25, 2015 that she had experienced no seizures since the previously-reported seizure in September 2014); Tr. 1040 (Plaintiff reported during an August 14, 2015 emergency room visit that she had not had a seizure in "a long time"); Tr. 968 (Plaintiff reported on September 3, 2015 that she self-

discontinued her seizure medication around mid-July 2015 and that her most recent

seizure was the previously-reported one in September 2014); Tr. 989 (Plaintiff

reported on December 2, 2015 that she experienced seizures one to two times per

month, which was down from her prior report that she experienced seizures two to

three times per month); Tr. 967 (December 3, 2015 chart note indicates Plaintiff's

date of last seizure was unknown but possibly June 2015); Tr. 1024 (Plaintiff

visited the emergency room on January 15, 2016 for a seizure); Tr. 1003 (Plaintiff

reported on January 19, 2016 that she used to experience one to two seizures per

month but now they were less frequent); Tr. 571 (Plaintiff testified in June 2016

that she sees her family doctor after she experiences a seizure for a checkup); Tr.

1162-65 (family doctor notes in January and February 2016 do not indicate that

Plaintiff presented for seizure-related evaluations).

Plaintiff offers evidence in the record that Plaintiff argues supports

Plaintiff's symptom testimony. ECF No. 17 at 16-17. However, as discussed

*supra*, Plaintiff's argument is largely based on an assumption, not supported by the

medical evidence, that Plaintiff's jerking motions constitute seizures.

Additionally, the evidence Plaintiff identifies to corroborate the number of seizures

Plaintiff testified to experiencing largely comes from lay testimony, rather than

documentation in medical treatment notes. ECF No. 17 at 16-17. The ALJ

reasonably concluded that the medical evidence did not corroborate the frequency

of seizures Plaintiff alleged, and the evidence Plaintiff identifies does not undermine this conclusion. Tr. 534-35. This finding is supported by substantial evidence.

### c. Mental Health

The ALJ found that the medical evidence did not support the level of mental health impairment that Plaintiff alleged. Tr. 535. Plaintiff testified that her mental health medications were ineffective and that she was nervous around other people and prone to outbursts of anger. Tr. 568-70, 592-93. Plaintiff also testified that she attempted suicide on Christmas Day in 2013. Tr. 445. However, the ALJ noted that this was not documented in the medical evidence. Tr. 535; *see* Tr. 519. Plaintiff was recommended to counseling, medication management, and a chemical dependency assessment in January 2014, Plaintiff was discharged from mental health care in February 2014 due to excessive cancellations and no-shows. Tr. 463, 989. Plaintiff consistently refilled her anxiety medications during the relevant period. Tr. 501-19, 1129-76. When Plaintiff did report an increase in anxiety symptoms, her anxiety medication dosage was increased and she was referred to mental health care. Tr. 1150-51, 1166-67. Plaintiff reengaged in mental health care in December 2015 and was recommended to six to twelve months of treatment. Tr. 989-92. During counseling, Plaintiff reported being more social and active, and that this helped with her symptoms. Tr. 1003. The record does not

show Plaintiff engaged in mental health treatment after February 2016. Tr. 989-1007. Furthermore, Plaintiff's treatment notes show normal psychological findings. *See* Tr. 1054 (September 4, 2014: behavior/mood is pleasant and cooperative); Tr. 1041 (August 14, 2015: cooperative mood/behavior); Tr. 1005 (December 30, 2015: Plaintiff observed to be handling stressors fairly well); Tr. 964-65 (February 22, 2016: Plaintiff exhibited depressed affect, relaxed posture, good eye contact, cooperative behavior, appropriate judgment, average to low average memory, and had no difficulty completing a three-step command); Tr. 1013 (February 23, 2016: behavior/mood is cooperative, affect is calm).

Plaintiff offers evidence in the record that Plaintiff argues supports Plaintiff's symptom testimony. ECF No. 17 at 17-18; *see* Tr. 460 (Plaintiff reported feeling depressed and worthless); Tr. 461 (Plaintiff reported suicide attempt in December 2013); Tr. 470 (Plaintiff reported increased anxiety and depression). However, the evidence Plaintiff identifies does not establish that the ALJ's finding is not supported by substantial evidence. *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). The ALJ reasonably concluded, based on this record, that the medical evidence did not support the level of mental health impairment Plaintiff alleged. Tr. 535. This finding is supported by substantial evidence.

### 3. Failure to Follow Treatment Recommendations

The ALJ found Plaintiff's symptom complaints were less credible because Plaintiff failed to follow treatment recommendations. Tr. 534-35. Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). On June 18, 2013, Plaintiff sought medical care following a seizure, and Plaintiff's doctor noted that Plaintiff was not taking her anti-seizure medication as prescribed. Tr. 478; *see also* Tr. 1075 (May 31, 2013: Plaintiff presented to the emergency room following a seizure and reported that she stopped taking seizure medication in March; chart note indicates medication noncompliance is a contributing factor to increased seizure activity). On September 3, 2015, Plaintiff reported that she self-discontinued her seizure medication approximately one and a half months prior. Tr. 968. Plaintiff's neurologist noted that Plaintiff tried four different seizure medications and "[s]he has not tolerated any of them, or at least so she thinks," and that she would need to take the medications for longer periods to determine if they worked. *Id.* The ALJ also noted that despite being recommended to counseling, medication management, and a chemical dependency assessment in January 2014, Plaintiff was discharged from mental health care in February 2014 due to excessive

ORDER - 29

cancellations and no-shows.  Tr. 463, 989.  Plaintiff testified at the March 2014 hearing that she stopped going to mental health appointments because she did not like to talk about her feelings.  Tr. 439.  Plaintiff also reported that she stopped going because she did not like her counselor.  Tr. 963.  Plaintiff reengaged in mental health care in December 2015 and was recommended to six to twelve months of treatment.  Tr. 989-92.  The record does not show Plaintiff engaged in mental health treatment after February 2016.  Tr. 989-1007.  The ALJ reasonably concluded that Plaintiff's failure to pursue recommended treatment undermined Plaintiff's subjective symptom reporting.  Tr. 534-35.  This finding is supported by substantial evidence.

### 4. Inconsistent Reporting

The ALJ found Plaintiff's symptom complaints were less credible because Plaintiff inconsistently reported her symptoms and drug use in the record.  Tr. 534-36.  In evaluating symptom claims, the ALJ may utilize ordinary techniques of evaluation of the evidence, including prior inconsistent statements.  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Moreover, it is well-settled in the Ninth Circuit that conflicting or inconsistent statements concerning drug use can contribute to an adverse credibility finding.  *Thomas*, 278 F.3d at 959.

The ALJ noted several instances where Plaintiff inconsistently reported her symptoms.  Tr. 534-35.  For example, Plaintiff testified during the June 2016

hearing that she experienced incontinence with her seizures.  Tr. 586.  However, during a February 9, 2016 examination, Plaintiff denied incontinence with seizures.  Tr. 948.  Plaintiff's neurology treatment notes similarly do not document reports of incontinence.  Tr. 469-72, 967-77.  Additionally, Plaintiff reported that she quit her job in October 2015 because she had a seizure at work.  Tr. 578, 961.  However, in December 2015, Plaintiff denied having a seizure since possibly June 2015.  Tr. 967.  Furthermore, despite reporting in December 2015 that Plaintiff had possibly experienced a seizure in June 2015, Plaintiff previously reported in September 2015 that she had not had a seizure since September 2014.  *Compare* Tr. 967 *with* Tr. 968.  The ALJ reasonably concluded that Plaintiff's inconsistent reporting undermined the reliability of her symptom reporting.  Tr. 534-35.

The ALJ also noted that Plaintiff inconsistently reported her marijuana use.  Tr. 535-36.  In January 2014, Plaintiff reported that she used marijuana twice a day for the last year.  Tr. 462.  The evaluator characterized this use as "problematic" and referred Plaintiff for a chemical dependency assessment.  Tr. 463.  During the March 2014 hearing, Plaintiff testified that she liked to smoke marijuana and had been using it since freshman year.  Tr. 440.  However, during a December 2015

mental health assessment, Plaintiff reported no history of drug abuse.[7]  Tr. 989.

During a February 2016 consultative examination, Plaintiff "denied using any

alcohol or street drugs in her past or present."  Tr. 963.  Plaintiff's April 6, 2016

urinalysis was positive for marijuana.  Tr. 1171.  During the June 2016 hearing,

Plaintiff reported that she stopped smoking marijuana seven months prior, but that

she drank cannabis tea to relax.  Tr. 579.  Plaintiff further testified that she

understood that cannabis tea is a marijuana product, but that she did not report her

use of cannabis tea to Dr. Billings because she did not consider it to be the same

thing as smoking marijuana.  Tr. 582-84.  The ALJ reasonably concluded that the

inconsistent reporting of her marijuana use as well as her symptom complaints

undermined Plaintiff's subjective symptom reporting.  Tr. 535-36.  This finding is

supported by substantial evidence.

The ALJ cited several clear and convincing reasons supported by substantial

evidence for discounting Plaintiff's symptom complaints.

---

[7] Plaintiff speculates that Plaintiff may not have considered her marijuana use to be

"abuse."  ECF No. 17 at 18-19.  The Court does not find this persuasive in light of

Plaintiff's prior referral to chemical dependency treatment.  Tr. 463.

ORDER - 32

**B. Medical Opinion Evidence**

Plaintiff challenges the ALJ's evaluation of the medical opinion of Wing Chau, M.D. and Emma Billings, Ph.D. ECF No. 17 at 6-13.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

(9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-831).

   *1. Dr. Chau*

   Dr. Chau examined Plaintiff on February 9, 2016, and opined Plaintiff could lift up to ten pounds occasionally; carry up to ten pounds occasionally; could sit for one hour at a time and six hours total in an eight-hour work day; could stand for 15 minutes at a time and one hour total in an eight-hour work day; could walk 10 minutes at a time and one hour total in an eight-hour work day; could occasionally reach, handle, finger, peel, push, and pull bilaterally; could occasionally operate foot controls; could never climb stairs, ramps, ladders, and scaffolds; could never stoop, kneel, crouch, or crawl; could occasionally balance; could tolerate no exposure to unprotected heights, moving mechanical parts, and operating a motor vehicle; could occasionally tolerate exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme heat, extreme cold, and vibrations; could tolerate exposure to moderate noise; and that "[a]t best, she is only capable of sedentary work mostly at a seated position, and it is doubtful that she will be able to even tolerate this." Tr. 948-56. The ALJ gave this opinion some weight and

disregarded Dr. Chau's opined severe postural, environmental, and manipulative limitations. Tr. 538. Because Dr. Chau's opinion was contradicted by Dr. Pelc, Tr. 560, the ALJ was required to provide specific and legitimate reasons for rejecting this opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Chau's opinion was inconsistent with the medical evidence. Tr. 538. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. Dr. Chau opined severe postural, environmental, and manipulative limitations based on Plaintiff's reports of severe widespread pain and uncontrolled seizures. Tr. 950. However, the record shows that Plaintiff's purpura was well-controlled with treatment. *See* Tr. 325, 329, 333, 338, 342, 344, 379, 1158, 1159. Additionally, while Plaintiff reported to Dr. Chau that she experienced frequent seizures including four seizures in the month preceding the evaluation, Tr. 948, the medical evidence did not support a finding that Plaintiff experienced seizures at the frequency she alleged. *See* Tr. 432-35, 469, 478, 571, 1075, 967-71, 1003, 1024, 1040, 1162-65. This inconsistency with the medical evidence provides specific and legitimate reason to discredit Dr. Chau's opinion. Plaintiff offers evidence of additional seizures that Plaintiff asserts supports Dr. Chau's opinion. ECF No. 17

ORDER - 35

at 9-10.  However, as discussed *supra*, Plaintiff's argument is largely based on an assumption, not supported by the medical evidence, that Plaintiff's jerking motions constitute seizures, and Plaintiff's treatment notes did not corroborate the number of seizures Plaintiff alleged that she experienced.  The Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record.  *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision).  The ALJ reasonably concluded that Dr. Chau's opined limitations were inconsistent with the medical evidence.  This finding is supported by substantial evidence.

Second, the ALJ found Dr. Chau's opinion was based on Plaintiff's self-reports.  Tr. 538.  A physician's opinion may be rejected if it based on a claimant's subjective complaints which were properly discounted.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair*, 885 F.2d at 604.  "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, [this] is no evidentiary basis for rejecting the opinion."  *Ghanim*, 763 F.3d at 1162.  Here, the ALJ found that Dr. Chau gave undue credence to Plaintiff's reports of severe pain symptoms and uncontrolled seizures.  Tr. 538.  As discussed *supra*, the ALJ provided several clear and convincing reasons to discredit Plaintiff's symptom

allegations, including the specific symptom claims the ALJ identified that Dr.

Chau relied upon in formulating his opinions regarding her limitations. Dr. Chau's

reliance on Plaintiff's reports of widespread severe pain and uncontrolled seizures

therefore provided specific and legitimate reason to discredit the functional

limitations Dr. Chau opined based on these reports.

Plaintiff also asserts that the ALJ erred in giving some weight to Dr. Chau's

opinion while also crediting the opinions of Dr. Opara, Dr. Iannuzzi, and Dr.

Wolfe. ECF No. 17 at 10. Plaintiff argues that the ALJ erred in giving less weight

to Dr. Chau's opinion, despite being Dr. Chau being the only medical source to

render an opinion on Plaintiff's physical functioning after the onset of her seizures.

*Id.* Plaintiff's argument invites this Court to reweigh the opinions of Dr. Opara,

Dr. Iannuzzi, and Dr. Wolfe. The Court "may neither reweigh the evidence nor

substitute its judgment for that of the Commissioner." *Blacktongue v. Berryhill*,

229 F. Supp. 3d 1216, 1218 (W.D. Wash. 2017) (citing *Thomas*, 278 F.3d at 954).

Overall, the ALJ's evaluation of Dr. Chau's opinion is free from harmful legal

error and is supported by substantial evidence.

### 2. *Dr. Billings*

Dr. Billings examined Plaintiff on February 22, 2016, and opined Plaintiff

had no impairment in her ability to understand and remember simple instructions,

carry out simple instructions, and make judgments on simple work-related

decisions; that Plaintiff had mild impairments in her ability to interact appropriately with the public, supervisors, and coworkers; and that Plaintiff's cannabis use may contribute to her anxiety and problems in social interactions. Tr. 958-59. The ALJ gave this opinion significant weight. Tr. 539. Plaintiff challenges the ALJ's evaluation, contending that Dr. Billings' opinion should have been given less weight. ECF No. 17 at 12-13. Although an ALJ must provide specific and legitimate reasons to reject contradicted medical opinion evidence, the same standard does not apply when the ALJ credits opinion evidence. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); *Bayliss*, 427 F.3d at 1216. The ALJ found Dr. Billings' opinion was consistent with Plaintiff's examination findings and treatment records. Tr. 539; *see* Tr. 501-19, 964-65, 989-1007, 1013, 1041, 1054, 1150-51, 1166-67, 1129-76. The evidence Plaintiff identifies to argue that Dr. Billings' opinion should have been given less weight does not undermine the substantial evidence supporting the ALJ's conclusion. *See Tommasetti*, 533 F.3d at 1038. Consistent with the discussion of the medical evidence *supra*, the ALJ reasonably concluded that Dr. Billings' opinion was supported by Plaintiff's examination findings and treatment records. Tr. 539. This finding is supported by substantial evidence.

## C. Lay Testimony

Plaintiff challenges the ALJ's evaluation of lay testimony from Plaintiff's mother, Sonja Martinez, and Plaintiff's teachers' questionnaires. ECF No. 17 at 13-15, 20. An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony cannot establish the existence of medically determinable impairments, but lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Id.*; 20 C.F.R. § 416.913; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

### 1. Ms. Martinez

Ms. Martinez testified during Plaintiff's 2014 hearing that Plaintiff was diagnosed with a seizure disorder in 2013, that Plaintiff experiences significant leg pain that she treated with hot water, and that Plaintiff attempted suicide in late 2013. Tr. 450-52. The ALJ gave some weight to Ms. Martinez' testimony. Tr. 536. The ALJ found Ms. Martinez's testimony was inconsistent with the medical

ORDER - 39

evidence.  Tr. 536.  Inconsistency with the medical evidence is a germane reason for rejecting lay witness testimony.  *See Bayliss*, 427 F.3d at 1218; *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (germane reasons include inconsistency with medical evidence, activities, and reports).  The ALJ noted that the record supported Ms. Martinez's testimony that Plaintiff experienced seizures, but not to the degree Ms. Martinez alleged.  Tr. 536; *see* Tr. 432-35, 469, 478, 571, 1075, 967-71, 1003, 1024, 1040, 1162-65.  The ALJ made the same finding regarding Ms. Martinez's testimony about Plaintiff's leg pain.  Tr. 536; *see* Tr. 325, 329, 333, 338, 342, 344, 379, 1158, 1159.  Similarly, the ALJ found that Plaintiff's mental health treatment record indicated her impairments were not as severe as Ms. Martinez alleged.  Tr. 536; *see* Tr. 501-19, 1129-1176.  Plaintiff offers evidence that Plaintiff argues is consistent with Ms. Martinez's testimony.  ECF No. 17 at 14-15.  Plaintiff's argument again relies on assumptions that the blood in Plaintiff's stool and urine is attributable to her purpura, and that her jerking motions constitute seizures.  *Id.* However, as discussed *supra*, these assumptions about the medical evidence are not supported by the record.  Additionally, the medical evidence Plaintiff offers of symptom complaints the ALJ did not specifically note does not undermine the substantial evidence supporting the ALJ's conclusion.  *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision).  The ALJ reasonably

interpreted the medical evidence as inconsistent with the level of impairment Ms. Martinez alleged. The inconsistencies between Ms. Martinez's opinion and the medical evidence provide germane reason to discredit her testimony. The ALJ's finding is supported by substantial evidence.

### 2. *Teacher Questionnaires*

Plaintiff challenges the ALJ's reliance on questionnaires completed by Plaintiff's fifth, sixth, and seventh grade teachers. ECF No. 17 at 20. On October 28, 2008, Plaintiff's fifth grade teacher indicated that Plaintiff had some obvious problems in acquiring and using information, some slight problems in attending and completing tasks, noted that Plaintiff did not attend available interventions, and noted that Plaintiff missed school due to leg pain. Tr. 158-65. On November 1, 2008, Plaintiff sixth grade teachers indicated Plaintiff had no problems in any of the functional domains, that Plaintiff functioned well in class, and that her only problems stemmed from absences associated with her medical condition. Tr. 167-73. On October 15, 2009, Plaintiff's seventh grade math and science teacher indicated Plaintiff had slight problems in acquiring and using information, that "compared to classmates she seems a normal student," and indicated that the teacher had not had any problems with Plaintiff in class. Tr. 206-13. The ALJ relied on these statements in evaluating the functional equivalence domains. Tr. 539-44. Plaintiff asserts that the ALJ should have given less weight to these

assessments, arguing that they are outdated, not well-explained, and inconsistent with the evidence. ECF No. 17 at 20. In support, Plaintiff offers evidence of Plaintiff's subsequent academic performance as evidence to undermine the opinions of her teachers. ECF No. 17 at 20. In so arguing, Plaintiff invites this Court to reweigh the evidence. The Court "may neither reweigh the evidence nor substitute its judgment for that of the Commissioner." *Blacktongue*, 229 F. Supp. 3d at 1218 (citing *Thomas*, 278 F.3d at 954). The ALJ is not required to provide reasons to credit evidence in the record. *See Orteza*, 50 F.3d at 750; *Bayliss*, 427 F.3d at 1216. Because these questionnaires address Plaintiff's functioning during the relevant period, the ALJ reasonably relied on these opinions in evaluating the functional equivalence domains.

### D. Functional Equivalence Domains

Plaintiff challenges the ALJ's assessment of the functional equivalence domains. ECF No. 17 at 19-20. At the final step of the child disability sequential evaluation, the ALJ must determine whether the impairment or combination of impairments functionally equals a listing. 20 C.F.R. § 416.926a(a). The ALJ's functional equivalence assessment requires the ALJ to evaluate the child's functioning in six "domains." These six domains, which are designed "to capture all of what a child can or cannot do," are as follows:

> (1) Acquiring and using information:
> (2) Attending and completing tasks;

ORDER - 42

(3) Interacting and relating with others;
(4) Moving about and manipulating objects;
(5) Caring for self; and
(6) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi).  A child's impairment will be deemed to functionally equal a listed impairment if the child's condition results in a "marked" limitations in two domains, or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(a).  An impairment is a "marked limitation" if it "interferes seriously with [a person's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i).  By contrast, an "extreme limitation" is defined as a limitation that "interferes very seriously with [a person's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).

Here, the ALJ found that before attaining age 18, Plaintiff had less than marked limitation in her ability to acquire and use information, no limitation in attending and completing tasks, less than marked limitation in interacting and relating with others, less than marked limitation in moving about and manipulating objects, no limitation in caring for herself, and less than marked limitation in health and physical well-being.  Tr. 539-43.  Plaintiff asserts that the ALJ should have found at least marked limitations in the first, third, fourth, and sixth domains.  ECF No. 17 at 19-20.  However, Plaintiff's argument is based on Plaintiff's challenges to the medical and lay opinion evidence.  *Id.*  As discussed *supra*, the ALJ's evaluation of the medical and lay opinion evidence is legally sufficient.  The Court

ORDER - 43

may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti*, 533 F.3d at 1038. The ALJ's evaluation of the functional equivalence domains is supported by substantial evidence.

**E. Listed Impairments**

Plaintiff challenges the ALJ's conclusion that Plaintiff's impairments did not meet or medically equal a listing. ECF No. 17 at 21-22. At the final step of the child disability sequential evaluation, the ALJ must then consider whether the impairment "medically equals" or "functionally equals" a disability listed in the "Listing of Impairments." 20 C.F.R. § 416.924(c)-(d). Similarly, at step three of the adult disability sequential evaluation, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

Plaintiff asserts the ALJ should have found that Plaintiff's purpura symptoms met or medically equaled Listings 114.03 and 14.03, the listing for systemic vasculitis. ECF No. 17 at 21-22. Plaintiff's argument is based on assertions about Plaintiff's diagnosis that come from a public website rather than

any medical source in the record. *Id.* at 22 n.2. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (ALJ "must not succumb to the temptation to play doctor and make [his or her] own independent medical findings"). Dr. Browder testified that Plaintiff's purpura was appropriately evaluated under listings for the skeletal system, and that Plaintiff's condition did not meet a medical listing. Tr. 46-48. The ALJ reasonably considered this evidence in the record, and Plaintiff does not establish error by offering a new theory of the medical evidence. *See Tommasetti*, 533 F.3d at 1038. The ALJ did not err in finding Plaintiff's purpura did not meet a listing.

Plaintiff also asserts the ALJ should have found that her seizures met or medically equaled Listings 111.02 and 11.02. ECF No. 17 at 21-22. Plaintiff's argument relies on assumptions about medical evidence that are not supported by the evidence. *See supra* n. 6. Additionally, the adult and child listings for epilepsy require the claimant to experience seizures with a particular frequency despite adherence to prescribed treatment. 20 C.F.R. § 404 Subpart P Appendix I. As discussed *supra*, the ALJ found that Plaintiff's seizures were controlled with medication, that Plaintiff did not comply with treatment recommendations, and that Plaintiff often self-discontinued her prescribed anti-seizure medication. *See* Tr. 432-35, 478, 556, 967-68, 970-71, 989, 1003, 1040, 1075. The ALJ's finding that Plaintiff's seizures did not meet a listing is supported by substantial evidence.

# CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 17, is DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 18, is GRANTED.

3. The Court enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED September 30, 2018.

<u>s/Mary K. Dimke</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE